# Finnigan Law Firm

EMPLOYMENT LAW ♦ BUSINESS LAW ♦ GENERAL CIVIL LITIGATION



LABOR &
EMPLOYMENT LAW

August 12, 2020

**Via EEOC Respondent Portal**

U.S. Equal Employment Opportunity Commission
Tampa Field Office
501 East Polk Street
Suite 1000
Tampa, FL  33602

Attention:     Hatto Parra
                        Federal Investigator

Re:     Respondent's Position Statement in Response to EEOC Charge

          *Ricky R. Ratliff v. Wycliffe Associates*
          *EEOC Charge No.:  511-2020-02869*

Dear Ms. Parra:

This letter is on behalf of our client, Wycliffe Associates ("Wycliffe" or "the Respondent"), as a position statement in response to the above referenced charge of gender discrimination ("Charge") based on sexual orientation that has been filed against Wycliffe by Ricky R. Ratliff ("Charging Party"), a former employee of Wycliffe.

The Charging Party alleges in his Charge that he was discriminated against on account of his sexual orientation due to being laid off from Wycliffe due to the impact of the COVID pandemic on Wycliffe's funding and staffing and during his initial probationary period of employment and in light of his sexual orientation.  Wycliffe's responses to the Charging Party's allegations in the Charge are set forth below in this position statement.

The following is a summary of Wycliffe's position as to the Charge based on information that has been provided to us by Wycliffe.  On behalf of Wycliffe, we reserve the right to change or supplement this position statement response if we or Wycliffe become aware of any additional information pertaining to this matter that we or Wycliffe are unaware of at the present time.

**Wycliffe Associates**

The 14th century John Wycliffe Bible is generally credited with being the first complete English translation of the Bible.  In 1967, Bill Butler, Dale Kietzman, and Rudy Renfer – friends

Ricky R. Ratliff v. Wycliffe Associates
EEOC Charge No.: 511-2020-02869
August 12, 2020
Page 2 of 10

of Bible translators who were deeply concerned with the future of Bible translation – discovered that Bible translators were spending an increasing amount of their time on tasks unrelated to Bible translation, like accounting, building maintenance, and more. They also noticed that Christian business professionals with a heart for service and a wide variety of skills could volunteer and accelerate Bible translation, freeing up thousands of hours of translation time each year. Knowing hundreds of millions of people were still waiting for God's Word in their own language, they committed to giving these people access to the truth of the gospel, so they could know the God who loves them and desires a relationship with them. In 1967, they founded Wycliffe Associates.

Since the founding of Wycliffe, the generosity of Bible translation supporters has allowed Wycliffe to expand its services to Bible translators to include advanced technology, efficient translation strategies, greater financial resources, and logistical and operational support. Wycliffe empowers national Bible translators under the authority of the local church in each community. Together with Wycliffe's donors and prayer partners, Wycliffe is following God's call to accelerate Bible translation in the most remote and in the most antagonistic parts of the world.

Wycliffe's mission is advancing the work of Bible translation around the world. Wycliffe accelerates the work of Bible translation by empowering national Bible translators to provide God's Word in their own language; partnering with the local church to guide and guard translation work, harnessing their passion and desire for God's Word; and engaging people from all around the world to provide resources, technology, training, and support for Bible translation. Wycliffe is directly involved with speeding Bible translation by providing technology, training, resources, logistics, networking, expertise, volunteers, discipleship, church planting and support, striving to achieve the goal of having a Bible in every language by the year 2025.

As a religious non-profit entity, Wycliffe maintains high standards for spirituality and the Christian Faith. Employees and volunteers are required to be in agreement with Wycliffe Associates' Statement of Faith which is set forth in the Employee and Volunteer Handbook ("Handbook") of Wycliffe. Any person who is not in agreement with the Statement of Faith will not be considered for service as an employee or volunteer with Wycliffe.

Wycliffe's Statement of Faith in its Handbook states as follows.

- We believe in divine intervention and consequent authority of the whole canonical Scriptures
- We believe in the doctrine of the Trinity
- We believe in the fall of man, his consequent moral depravity and his need of regeneration
- We believe in atonement through the substitutionary death of Christ

Ricky R. Ratliff v. Wycliffe Associates
EEOC Charge No.:  511-2020-02869
August 12, 2020
Page 3 of 10

- We believe in the doctrine of justification by faith
- We believe in the resurrection of the body, in the case of the just and the unjust
- We believe in the eternal life of the saved and the eternal punishment of the lost

Copies of Wycliffe's Introduction and its Welcome to Wycliffe Associates sections of its Handbook are attached to this position statement as Exhibit "1".  A copy of Wycliffe's Statement of Faith provision in its Handbook is attached to the position statement as Exhibit "2".

Wycliffe is a Christian ministry that is incorporated as a religious nonprofit corporation in the state of Florida.  Wycliffe is a tax-exempt organization as described in section 501(c)(3) of the Internal Revenue Code ("IRC") and classified as a public charity—specifically a church as described in sections 509(a)(1) and 107(b)(1)(A)(i) of the IRC.

**Background of Charging Party**

The Charging Party was hired by Wycliffe on February 24, 2020, as a Software Developer II which was a newly created position in the Information Technology Department of Wycliffe.  The job responsibilities of the Software Developer II position include but are not limited to proactively developing software solutions to advance Bible Translation in collaboration with the Director of Application Development and to contribute creativity and energy to the task of accelerating Bible Translation. The job description for the Software Developer II position also sets forth personal qualifications for the position including but not limited to that the employee has a personal relationship with Jesus Christ, should sense a call from God to ministry and have a genuine caring for people, have the ability to be at ease with people from diverse cultures and backgrounds, and a demonstration of the attitudes of a servant leader.  A copy of the job description for the Software Developer II job description is attached to this position statement as Exhibit "3".

On April 13, 2020, the Charging Party was advised that he was being laid off from his former position with Wycliffe by the Manager of Wycliffe's Information Technology Department, Mark Stedman ("Mr. Stedman").  Wycliffe's Human Resources Director, Terri Mwangi ("Ms. Mwangi"), and the Charging Party's immediate supervisor, Craig Oliver, also attended the video conference meeting when the Charging Party was laid off.

During the video conference meeting, which was done telephonically due to Wycliffe's employees working remotely due to the pandemic, Mr. Stedman advised the Charging Party that he was being laid off due to the impact of the COVID pandemic on Wycliffe's funding and staffing, and also due to the Charging Party still being within his initial 90-day probationary

Ricky R. Ratliff v. Wycliffe Associates
EEOC Charge No.: 511-2020-02869
August 12, 2020
Page 4 of 10

period of employment and also in light of the Charging Party's sexual orientation[1] and Wycliffe, as a religious organization, being exempt from certain discrimination laws under Title VII. A copy of an email dated April 13, 2020, from Ms. Mwangi to the Charging Party confirming the termination of his employment with Wycliffe as of April 13th is attached to this position statement as Exhibit "4".

In addition to the Charging Party's layoff due to the impact of the COVID pandemic on Wycliffe's funding and staffing, Wycliffe has also had to lay off several other employees since the pandemic started impacting businesses and organizations in the U.S. in March 2020. The COVID pandemic has impacted Wycliffe's mission and operations primarily in the form of having to cancel its employees travel within and outside of the United States who are on Wycliffe's development team and in terms of its fundraising and its funding to support its mission and operations.

Prior to the pandemic, Wycliffe's Development department consisted of six (6) employees who traveled to various  parts of the world and within the United States hosting fundraising related banquets and conferences for donors and potential donors who donate money that funds Wycliffe's Bible Translation mission and operations. In light of the pandemic, since March of 2020 Wycliffe has laid off the below listed four (4) of the six (6) long term employees in its Development department:

1) Steve Prieb – Dates of Employment – May 2013 – March 2020;
2) William McDonald – Dates of Employment – September 2013 – March 2020;
3) Douglas Coutcher – Dates of Employment – January 2015 – March 2020; and,
4) Earl Thornton – Dates of Employment – August 2014 – March 2020.

The remaining two (2) employees in Wycliffe's Development department are now conducting their fundraising activities by telephone conferences and without being able to travel for fundraising related banquets and conferences for donor and potential donors. As a religious non-profit mission organization, Wycliffe depends entirely on its donors and prospective donors who donate money that fund Wycliffe's Bible Translation mission and operations.

In addition to laying off the Charging Party and the above referenced employees from the Development department, in June of 2020, Wycliffe also laid off one (1) of its Call Center Specialists, Valentina Lamas ("Ms. Lamas"). Like the Charging Party, Ms. Lamas was a newly hired employee of Wycliffe, having only worked with Wycliffe since February 2020. Importantly, the Charging Party, Ms. Lames and the above referenced Development department employees have not been replaced by any other newly hired employee since their layoffs and their former positions within Wycliffe remain vacant as of this time.

---

[1] The Charging Party advised Ms. Mwangi of his sexual orientation on April 6, 2020, when he sought to add his husband to Wycliffe's health insurance.

Ricky R. Ratliff v. Wycliffe Associates
EEOC Charge No.: 511-2020-02869
August 12, 2020
Page 5 of 10

## Wycliffe's Equal Employment and Volunteer Opportunity Policy

In Wycliffe's Handbook there is a policy on Equal Employment and Volunteer Opportunity which states as follows.

> It is the desire of WA to recognize all those called by the Lord. While WA maintains high standards for spirituality, health and personal qualifications, each individual will be considered on his/her own merits, without regard to race, color, sex, national origin, age, disability, veteran status, genetic information or any other characteristic protected by federal, state, or municipal law. This policy applies to all terms, conditions, and privileges of employment, including hiring, training, promotion, compensation, and benefits. WA complies with the provisions of the American with Disabilities Act (ADA) and will not discriminate against any qualified employee/volunteer or job applicant with respect to any terms, privileges, or conditions of employment because of a person's physical or mental disability.

> As a religious organization, Wycliffe Associates is exempt from certain discrimination laws related to religious and creed rights.

A copy of Wycliffe's Equal Employment and Volunteer Opportunity policy is attached to this position statement as Exhibit "5". The Charging Party acknowledged his receipt of Wycliffe's Handbook via the Employee and Volunteer Handbook Receipt which he signed and dated on February 24, 2020, a copy of which is attached to this position statement as Exhibit "6".

In light of the above referenced EEO policy, the Charging Party was made aware by Wycliffe and Wycliffe was transparent that as a religious organization, Wycliffe considered itself as being exempt from certain discrimination laws under Title VII.

## Wycliffe's Statement of At-Will Employment Status Policy

In the Wycliffe's Handbook there is a Statement of At-Will Employment Status Policy which states as follows.

> Nothing in this Handbook nor any other communication by a WA Representative or any other employee, whether oral or written, is intended to in any way create a contract of employment. Unless I have a written employment agreement signed by an authorized WA Representative, I am employed at will and nothing in this Handbook can be construed to contradict, limit or otherwise affect my right or WA's right to terminate the employment relationship at any time with or without notice or cause. If I have a written employment agreement signed by an authorized

Ricky R. Ratliff v. Wycliffe Associates
EEOC Charge No.:  511-2020-02869
August 12, 2020
Page 6 of 10

WA Representative and a provision of this Handbook conflicts with the terms of my employment agreement, I understand that the terms of my employment agreement will prevail.

The same at-will employment status language appears in the Charging Party's offer letter that he received from Wycliffe's Director of Human Resources, Ms. Mwangi.  Specifically, Paragraph 6 of the offer letter states.

Your employment with WA is for no specific term and may be terminated by you or WA with or without cause at any time. No oral promise, WA policy, custom, business practice, or other procedure including the handbook, or any other personnel manuals constitutes any employment contract or modification of the at-will employment relationship between you and WA.

A copy of the Statement of At-Will Employment Status Policy is attached to this position statement as Exhibit "7".  A copy of the job offer letter is attached to this position statement as Exhibit "8".

In light of Wycliffe's At-Will Employment Status Policy and the content of the job offer letter about at-will employment, the Charging Party was made aware that he was an at-will employee and that Wycliffe could discontinue the employment relationship for any reason at any time.  Therefore, Wycliffe was within its rights to lay off the Charging Party as of April 13, 2020, as he was an at-will employee.

## Wycliffe's 90-Day New Hire Period Policy

Wycliffe's Handbook also has a 90-day New Hire Period Policy which states as follows.

The first 90 days of continuous employment at WA is considered a trial period.  During this time you will learn your responsibilities, get acquainted with fellow employees and perform your job responsibilities.  Upon completion of this trial period, WA will review your performance.

Completion of the 90-day trial period does not entitle you to remain employed by WA for any definite period of time.  During the new hire period (and after) your employment remains at-will, which means that both you and WA are free, at any time, with or without notice and with or without cause, to end the employment relationship and your compensation.  After completion of the trial period, full-time employees will be eligible for WA employee benefits.

A copy of Wycliffe's 90-Day New Hire Period is attached to this position statement as Exhibit "9".

Ricky R. Ratliff v. Wycliffe Associates
EEOC Charge No.:  511-2020-02869
August 12, 2020
Page 7 of 10

The same 90-Day New Hire Period language also appears in the Charging Party's offer letter from the Director of Human Resources, Ms. Mwangi previously noted in this position statement as Exhibit "8".  Specifically, Paragraph 4 of the offer letter states.

All new employees must complete a 90-day introductory period. The introductory period in no way effects the at-will status of all employees.

Wycliffe was within its rights to lay off the Charging Party on April 13, 2020, as he was still a probationary employee in his initial ninety (90) day probationary period of employment with Wycliffe.

## Title VII and its Exception for Religious Organizations

As set forth above, in Wycliffe's Handbook there is a policy on Equal Employment and Volunteer Opportunity which states in relevant part as follows.

"…As a religious organization, Wycliffe Associates is exempt from certain discrimination laws related to religious and creed rights…"

In light of the above referenced EEO policy, the Charging Party was made aware by Wycliffe and Wycliffe was transparent that as a religious organization, Wycliffe considered itself exempt from certain discrimination laws related to religious and creed rights.  The Charging Party was also well aware that Wycliffe was a religious organization.

In a recent U.S. Supreme Court decision, *Our Lady of Guadalupe School v. Morrissey-Berru*, Nos. 19-267 and 19-348, 591 U.S. _____ (July 8, 2020), the Supreme Court decided that two (2) employment discrimination cases for age and disability discrimination arising under the Age Discrimination in Employment Act ("ADEA") and the Americans with Disabilities Act ("ADA") could not be brought by the joined Plaintiffs against their former school based employers under the ministerial exception applicable to churches and other religious organizations.  Prior to the *Our Lady of Guadalupe School* case reaching the U.S. Supreme Court, the underlying District Courts also granted the schools' summary judgment pursuant to the ministerial exception doctrine.  However, the U.S. Court of Appeals for the Ninth Circuit ("Ninth Circuit") reversed the District Courts on grounds that the ministerial exemption did not apply to the joined Plaintiffs. In a prior U.S. Supreme Court case of *Hosanna-Tabor Evangelical Lutheran Church & School v. Equal Employment Opportunity Commission,* 565 U.S. 171 (2012), the Supreme Court unanimously decided in that, in employing leaders, a religious organization need not adhere to federal employment discrimination laws, thus creating the ministerial exception.  In the *Hosanna-Tabor* case, the U.S. Supreme Court set forth four (4) conditions in order for a religious organization to evoke the ministerial exception.

Ricky R. Ratliff v. Wycliffe Associates
EEOC Charge No.: 511-2020-02869
August 12, 2020
Page 8 of 10

## The EEOC's Website and Guidelines on Title VII and its Exception for Religious Organizations

The EEOC's website and its Guidelines under Section 12 of the EEOC's Compliance Manual pertaining to Religious Discrimination states that as a result of the Supreme Court's decision in *Our Lady of Guadalupe School v. Morrissey-Berru*, that the EEOC is currently working on updating that webpage.

The EEOC's current website and its Guidelines under Section 12 of the EEOC's Compliance Manual pertaining to Religious Discrimination states in relevant part as follows with the respective footnotes omitted.

**B. Covered Entities**

**Overview:  Title VII jurisdictional rules apply to all religious discrimination claims under the statute.  However, specially-defined "religious organizations" and "religious educational institutions" are exempt from certain religious discrimination provisions, and a "ministerial exception" bars Title VII claims by employees who serve in clergy roles.**

**C. Exceptions**

**1. Religious Organizations**

Under Title VII, religious organizations are permitted to give employment preference to members of their own religion. The exception applies only to those institutions whose "purpose and character are primarily religious." That determination is to be based on "[a]ll significant religious and secular characteristics."   Although no one factor is dispositive, significant factors to consider that would indicate whether an entity is religious include:

- Do its articles of incorporation state a religious purpose?
- Are its day-to-day operations religious (*e.g.*, are the services the entity performs, the product it produces, or the educational curriculum it provides directed toward propagation of the religion)?
- Is it not-for-profit?
- Is it affiliated with or supported by a church[2] or other religious organization?

This exception is not limited to religious activities of the organization.  However, it only allows religious organizations to prefer to employ individuals who share their religion. The exception does not allow religious organizations otherwise to discriminate in employment on

---

[2] The IRS has determined that Wycliffe is a church.

protected bases other than religion, such as race, color, national origin, sex, age, or disability. Thus, a religious organization is not permitted to engage in racially discriminatory hiring by asserting that a tenet of its religious beliefs is not associating with people of other races.  Similarly, a religious organization is not permitted to deny fringe benefits to married women but not to married men by asserting a religiously based view that only men can be the head of a household.

## 2.  Ministerial Exception

Courts have held, based on First Amendment constitutional considerations, that clergy members cannot bring claims under the federal employment discrimination laws, including Title VII, the Age Discrimination in Employment Act, the Equal Pay Act, and the Americans with Disabilities Act, because "[t]he relationship between an organized church and its ministers is its lifeblood."  This "ministerial exception" comes not from the text of the statutes, but from the First Amendment principle that governmental regulation of church administration, including the appointment of clergy, impedes the free exercise of religion and constitutes impermissible government entanglement with church authority. Thus, courts will not ordinarily consider whether a church's employment decision concerning one of its ministers was based on discriminatory grounds, although some courts have allowed ministers to bring sexual harassment claims.

The ministerial exception applies only to those employees who perform essentially religious functions, namely those whose primary duties consist of engaging in church governance, supervising a religious order, or conducting religious ritual, worship, or instruction. The exception is not limited to ordained clergy, and has been applied by courts to others involved in clergy-like roles who conduct services or provide pastoral counseling.  However, the exception does not necessarily apply to everyone with a title typically conferred upon clergy (*e.g.*, minister). In short, in each case it is necessary to make a factual determination of whether the function of the position is one to which the exception applies.

## Title VII Religious Exemption Applicable to Wycliffe

The Supreme Court's decision in the *Our Lady of Guadalupe School* case supports, validates and confirms Wycliffe's statement in its EEO policy that as a religious organization, specifically as a church, that Wycliffe is exempt from certain discrimination laws related to religious and creed rights.  As explained in the EEOC's above referenced guideline regarding Title VII and the ministerial exception, the "ministerial exception" comes not from the text of the statutes, but from the First Amendment principle that governmental regulation of church administration, including the appointment of clergy, impedes the free exercise of religion and constitutes impermissible government entanglement with church authority. The First Amendment principle that governmental regulation of church administration, including the

Ricky R. Ratliff v. Wycliffe Associates
EEOC Charge No.:  511-2020-02869
August 12, 2020
Page 10 of 10

appointment of clergy, impedes the free exercise of religion and constitutes impermissible government entanglement with church authority means that certain aspects of Title VII may not be enforced against Wycliffe as that would violate the free exercise of religion by Wycliffe and it would interfere with Wycliffe's ability to make employment related decisions which are essential to Wycliffe as a church and to its central mission, Bible Translation.

In the instant Charge, the Charging Party's former job responsibilities in the Software Developer II position included but were not limited to proactively developing software solutions to advance Wycliffe's Bible Translation mission and operations in collaboration with the Director of Application Development and to contribute creativity and energy to the task of accelerating Bible Translation.  The Charging Party's above referenced software development job responsibilities to advance Wycliffe's Bible Translation mission, activities and operations support Wycliffe's determination that the functions of the position are ones to which the Title VII ministerial exception applies.

In light of Wycliffe's determination that the functions of the Charging Party's position are ones to which the Title VII ministerial exception applies, Title VII's now expanded coverage of an individual's sexual orientation may not be enforced by the EEOC on behalf of the Charging Party against Wycliffe.  In addition, when the Charging Party was laid off from Wycliffe on April 13, 2020, Title VII had not been held as of that time by the U.S. Supreme Court to prohibit employment related discrimination on account of an employee's sexual orientation.  Lastly, Wycliffe submits that as a church and under the ministerial exception as set forth in the *Our Lady of Guadalupe School* and the *Hosanna-Tabor* cases that Title VII as it now pertains to an individual's sexual orientation may not be enforced against Wycliffe especially in light of the Charging Party's former position with Wycliffe.

## <u>Conclusion</u>

For all the above reasons and as supported by the documentation attached to this position statement, Wycliffe respectfully requests that the EEOC dismiss the Charging Party's Charge in its entirety.  Please do not hesitate to contact me if we can answer any additional questions or provide any additional information.

Respectfully submitted,

John Finnigan
On behalf of Wycliffe Associates

JF/dn
Enclosures

# Introduction

### Welcome to Wycliffe Associates!

As an employee or volunteer, you will find your Wycliffe Associates (WA) experience to be both rewarding and challenging. It is our desire and purpose to make your time with us a positive experience.

WA is a Christian ministry that is incorporated as a religious nonprofit corporation in the state of California. Our mission is involving people in the advancement of Bible translation. As each member of the body of Christ uses their God-given skills and experience, the global team is strengthened and equipped for greater effectiveness. Together we are urgently working to assure that no one is beyond the reach of God's Word in their heart language.

WA maintains a staff of professionals to assist you in all matters related to employment. In addition, the WA Human Resources Department is available to you to administer the guidelines and policies for specific situations. The Human Resources Department strives to maintain objectivity in serving employees and in providing advice and counsel on all WA policy-related issues.

Charge 511-2020-02869 Exhibit 1

### Statement of Faith

- We believe in the divine inspiration and consequent authority of the whole canonical Scriptures
- We believe in the doctrine of the Trinity
- We believe in the fall of man, his consequent moral depravity and his need of regeneration
- We believe in the atonement through the substitutionary death of Christ
- We believe in the doctrine of justification by faith
- We believe in the resurrection of the body, in the case of the just and the unjust
- We believe in the eternal life of the saved and the eternal punishment of the lost

As a religious, non-profit entity, WA maintains high standards for spirituality and the Christian faith. Employees and volunteers are required to be in agreement with WA's Statement of Faith. Any person who is not in agreement with the statement will not be considered for service as an employee or volunteer with WA.

WA's commitment to you is to provide a nurturing Christ-centered environment in which you can grow spiritually and enjoy fellowship with one another while supporting the work of Bible translation.

### Vision 2025

Linking with partners worldwide, we aim by the year 2025 there will be a Bible in every language.

### Handbook Purpose & Right to Revise

This handbook contains information about WA's employment and volunteer policies and procedures and an overview of WA's benefits. For specific information about employee benefits, you should refer to the plan documents, which are controlling. The policies and procedures in this Handbook are guidelines only. WA reserves the right to interpret and administer the provisions of this Handbook as needed.

These policies and practices are in effect at the time of publication. All previously issued handbooks, inconsistent policy statements or memoranda are superseded. With the exception of the at-will employment policy, WA reserves the right to revise, modify, delete or add to any and all policies, procedures, work rules or benefits stated in this handbook or in any other document. Except for the policy of at-will employment, which can only be changed in writing by WA, WA has the maximum discretion permitted by law to change, modify or delete any provision in this Handbook at any time with or without notice.

Charge 511-2020-02869 Exhibit 2



**Job Title:** Software Developer II

**Location of Job:** Orlando, FL

**Reporting Relationship:** Director of Application Development

**Peer Relationships:** Other Software Developers, Database Developers

**Exemption Status:** Exempt

**Position Summary:** The ideal candidate wants to work in a fast-paced, results oriented organization, where focus on providing solid solutions is a must. Responsible for the full software development lifecycle within a team context. Candidate will be responsible for gathering requirements from customers, analyzing customer needs, developing solutions, regular communication and demonstrations to the customer, and ongoing maintenance as needed. Position is equally responsible for internal business systems and external field translation tools and systems.

**Job Responsibilities:**

1. In collaboration with the Director of Application Development, proactively develop software solutions to advance Bible Translation.

2. Work with internal and external customers/users to identify, understand, and document their needs.

3. Work with team members and vendors to design, develop, document and implement custom solutions.

4. Computer programming, including but not limited to JavaScript, jQuery, C#, PHP, Python, REST APIs, and a variety of other environments and technologies as needed.

5. Leverage experience and develop relationships to assist and mentor team members.

6. Contribute creativity and energy to the task of accelerating Bible Translation.

**Education, prior work experience, and/or specialized skills and knowledge:**

1. Strong brainstorming and creativity ability. Quickly understand new challenges and respond with possibilities and enthusiasm.

2. At least 5 years' experience developing applications.

3. At least 2 years' experience building mobile responsive web applications using frameworks such as jQuery , Bootstrap, React, and Angular. Strong familiarity with HTML5 and CSS



required.

4. Experience with .NET development, especially in C#, a plus but not required.

5. Experience with Java and Android Development, a plus but not required.

6. Experience integrating separate systems via API, for content publishing and exposure, plus bidirectional CRUD operations.

7. Demonstrated capacity to quickly learn new systems, skills, languages, and programming environments.

8. Experience with linguistics, Bible translation, or other relevant subject areas a plus but not required.

9. Bachelor's degree from accredited college strongly preferred. Priority given to applicants with computer science or other related degrees.

10. Occasional over-night domestic and international travel required (up to 10%)

**Personal Qualifications:**

1. Has a personal relationship with Jesus Christ.

2. Should sense a call from God to ministry and have a genuine caring for people.

3. Should have personal warmth that invites confidence and possess a personal integrity that never forfeits the trust that is offered.

4. Ability to be at ease with people from diverse cultures and backgrounds.

5. Demonstration of the attitudes of a servant leader.

6. Ability to facilitate and coordinate the work of others.

7. Highly self-motivated and directed.

8. Keen attention to detail.

9. Ability to communicate effectively in oral and written form.

10. Ability to work effectively with a virtual team.

11. Ability and desire to learn new technologies, improve skills, and adapt to change.

**Terri Mwangi**

| | |
|---|---|
| **From:** | Terri Mwangi |
| **Sent:** | Monday, April 13, 2020 1:18 PM |
| **To:** | ricky.raymond.ratliff@gmail.com |
| **Cc:** | Mark Stedman |
| **Subject:** | Termination of Employment |

Ricky,

Pursuant to our discussion of this afternoon, Wycliffe Associates Inc. is terminating your employment as of today.

This termination takes effect during your probation period, however, WA is going to pay you through April 30, 2020.

We wish you well in your future endeavors.

Blessings,

~terri

Terri Mwangi
HR Director, Wycliffe Associates
P O Box 620143 | Orlando, FL 32862
T: (407) 852.5364 | F: (407).852.5364

Wycliffe ASSOCIATES ACCELERATING BIBLE TRANSLATION

*Train people well enough so they can leave, treat them well enough so they don't want to. ~Richard Bronson*

1

Charge 511-2020-02869 Exhibit 4

However, any written changes to this handbook will be distributed to all employees and volunteers. No oral statements or representations can in any way supplement, change or modify the provisions of this handbook.

Each employee should read and become familiar with the information contained in this Handbook. Failure to comply with WA's policies or procedures may result in discipline, up to and including termination.

The provisions in this Handbook are not intended to in any way create any contractual obligations with respect to your employment. Nothing in this handbook or in any other personnel document, including benefit plan descriptions, creates or is intended to create a promise or representation of continued employment.

### Statement of At-Will Employment Status

Nothing in this Handbook nor any other communication by a WA Representative or any other employee, whether oral or written, is intended to in any way create a contract of employment. Unless I have a written employment agreement signed by an authorized WA Representative, I am employed at will and nothing in this Handbook can be construed to contradict, limit or otherwise affect my right or WA's right to terminate the employment relationship at any time with or without notice or cause. If I have a written employment agreement signed by an authorized WA Representative and a provision of this Handbook conflicts with the terms of my employment agreement, I understand that the terms of my employment agreement will prevail.

### Equal Employment and Volunteer Opportunity

It is the desire of WA to recognize all those called by the Lord. While WA maintains high standards for spirituality, health and personal qualifications, each individual will be considered on his/her own merits, without regard to race, color, sex, national origin, age, disability, veteran status, genetic information or any other characteristic protected by federal, state, or municipal law. This policy applies to all terms, conditions, and privileges of employment, including hiring, training, promotion, compensation, and benefits. WA complies with the provisions of the American with Disabilities Act (ADA) and will not discriminate against any qualified employee/volunteer or job applicant with respect to any terms, privileges, or conditions of employment because of a person's physical or mental disability.

As a religious organization, Wycliffe Associates is exempt from certain discrimination laws related to religious and creed rights.

Charge 511-2020-02869 Exhibit 5

## FOR EMPLOYEES AND VOLUNTEERS

## Handbook Receipt and Volunteer Agreements

I understand that this Handbook is the property of Wycliffe Associates (WA) and that I have been given a copy of the Handbook to use during my employment/service with WA, and I must return the Handbook upon my separation from WA. I acknowledge that I read the Handbook, understood it and agree to comply with it. I understand that WA has the maximum discretion permitted by law to interpret, administer, change, modify or delete the rules, regulations, procedures and benefits contained in the Handbook at any time with or without notice. No statement or representation by a supervisor or manager or any other employee, whether oral or written, can supplement or modify the Handbook. I also understand that any delay or failure caused by WA to enforce any rule, regulation, or procedure contained in the Handbook will not constitute a waiver of WA's right to do so in the future.

I acknowledge, agree and understand that service with WA is at all times "at-will", meaning that either I or WA may discontinue the employment/service relationship for any reason at any time, that this Handbook is not a contract of employment/service, and that WA disclaims any implied contractual obligation of continuing my employment/service.

I further acknowledge and understand that WA's Human Resources Department is available to answer questions I may have regarding any of its policies of employment.

Video/Photo Publication Permission:

By entering my full name on this form, I also give Wycliffe Associates the full right to use my photograph(s), including any photos of myself, and/or videotaped image(s) and sound byte(s) in its recruitment, public relations, web site, and promotional efforts. I understand that they could be used in various publications and/or broadcasts in the United States and/or throughout the world in the promotion of Bible translation.

Understood, accepted and agreed to, this _24_ day of _Feb._ , 20_20_

_Ricky L Ratliff_
Employee's/Volunteer's Printed Name

_[signature]_
Employee's/Volunteer's Signature

Charge 511-2020-02869 Exhibit 6

However, any written changes to this handbook will be distributed to all employees and volunteers. No oral statements or representations can in any way supplement, change or modify the provisions of this handbook.

Each employee should read and become familiar with the information contained in this Handbook. Failure to comply with WA's policies or procedures may result in discipline, up to and including termination.

The provisions in this Handbook are not intended to in any way create any contractual obligations with respect to your employment. Nothing in this handbook or in any other personnel document, including benefit plan descriptions, creates or is intended to create a promise or representation of continued employment.

## Statement of At-Will Employment Status

Nothing in this Handbook nor any other communication by a WA Representative or any other employee, whether oral or written, is intended to in any way create a contract of employment.  Unless I have a written employment agreement signed by an authorized WA Representative, I am employed at will and nothing in this Handbook can be construed to contradict, limit or otherwise affect my right or WA's right to terminate the employment relationship at any time with or without notice or cause.  If I have a written employment agreement signed by an authorized WA Representative and a provision of this Handbook conflicts with the terms of my employment agreement, I understand that the terms of my employment agreement will prevail.

## Equal Employment and Volunteer Opportunity

It is the desire of WA to recognize all those called by the Lord. While WA maintains high standards for spirituality, health and personal qualifications, each individual will be considered on his/her own merits, without regard to race, color, sex, national origin, age, disability, veteran status, genetic information or any other characteristic protected by federal, state, or municipal law.  This policy applies to all terms, conditions, and privileges of employment, including hiring, training, promotion, compensation, and benefits. WA complies with the provisions of the American with Disabilities Act (ADA) and will not discriminate against any qualified employee/volunteer or job applicant with respect to any terms, privileges, or conditions of employment because of a person's physical or mental disability.

As a religious organization, Wycliffe Associates is exempt from certain discrimination laws related to religious and creed rights.

Charge 511-2020-02869 Exhibit 7



February 17, 2020

Ricky Ratliff

ricky.raymond.ratliff@gmail.com

Re: Employment with Wycliffe Associates

Dear Ricky,

Congratulations! This letter will confirm our offer to you and your acceptance of employment with Wycliffe Associates (WA) in the position of Software Developer II located in Orlando, FL. Your start date will be on or about February 24, 2020 and your starting salary will be $82,500 annually.

Paychecks are distributed semi-monthly. You will be classified as an exempt employee; your normal working schedule will be from 8:00 a.m. to 5:00 p.m., Monday through Friday. You will report to Craig Oliver, Application Development Director. This offer is contingent upon a satisfactory background and reference check.

On or about your first day of employment, you will report to Human Resources for new employee orientation. At that time, you must complete an I-9 Form, and supply us with documents proving both your identity and your legal right to work in the U.S. If you are not able to supply these documents, you will not be able to begin work.

All new employees must complete a 90-day introductory period. The introductory period in no way effects the at-will status of all employees. You will be eligible for coverage under the WA medical and other insurance programs effective March 1, 2020.

Your benefits will be as outlined in the WA Employee Handbook and include medical and dental insurance. In addition, you will receive $50,000 life insurance and annual benefits of two weeks of vacation, 12 days of sick time, and one personal day. WA also offers a 403b. Participation is voluntary and begins after satisfactory completion of 90 days of employment. WA makes discretionary contributions on your behalf after completion of two years of continuous service.

I am delighted to have you join WA. Your employment with WA is for no specific term and may be terminated by you or WA with or without cause at any time. No oral promise, WA policy, custom, business practice, or other procedure including the handbook, or any other personnel manuals constitutes any employment contract or modification of the at-will employment relationship between you and WA.

Please confirm your acceptance of the offer as outlined by email. Please bring the signed copy on your first day of employment.  If you have any questions, or if anything in this letter is not consistent with your understanding of our offer, please contact Craig Oliver as soon as possible.

I look forward to working with you in this ministry.

Sincerely,

Terri Mwangi, JD
Director of Human Resources

February 17, 2020

_____
Date

I have read, understand and accept the offer of
employment as outlined in this letter.

_____
Ricky Ratliff

_____
Date

## 90-Day New Hire Period

The first 90 days of continuous employment at WA is considered a trial period. During this time you will learn your responsibilities, get acquainted with fellow employees and perform your job responsibilities. Upon completion of this trial period, WA will review your performance.

Completion of the 90-day trial period does not entitle you to remain employed by WA for any definite period of time.  During the new hire period (and after) your employment remains at-will, which means that both you and WA are free, at any time, with or without notice and with or without cause, to end the employment relationship and your compensation. After completion of the trial period, full-time employees will be eligible for WA employee benefits.

## Requirements for Supported Employees

A fully supported employee will reach employee status (condition of employment) when s/he raises 100% of his/her support goal and is assigned to serve at a project or in a department. At this point, s/he will begin to receive a monthly salary.

## Payment of Wages

All employees of WA are paid the fifteenth and the last days of the month for work performed during the previous half-month. If a regular payday falls on a holiday, employees will be paid on the preceding workday.

## Overtime

Overtime work will be the rare exception. A supervisor must previously authorize all overtime work. WA provides compensation for all overtime hours worked by non-exempt employees in accordance with state and federal law.

**Exempt Employees** – Exempt employees may be required to work hours beyond their normal schedules, as work demands require. No overtime compensation will be paid to exempt employees.

## Payroll Advances

WA does not permit advances against paychecks or against accrued vacation compensation.

Charge 511-2020-02869 Exhibit 9