UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

RICKY R. RATLIFF,

     Plaintiff,

v.                                 Case No.:  6:22-CV-01185-PGB-DAB

WYCLIFFE ASSOCIATES, INC.,

     Defendant.

_____/

### PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S AMENDED MOTION TO DISMISS PLAINTIFF'S COMPLAINT¶

Plaintiff, RICKY R. RATLIFF, files this response in opposition to Defendant's Amended Motion to Dismiss Plaintiff's Complaint.  The Motion should be denied because Plaintiff has sufficiently plead a cause of action for sex discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII").

### FACTUAL BACKGROUND

Plaintiff was hired by Defendant on or about February 24, 2020 as a "Software Developer II".  (Doc. 1, ¶ 11).  As a Software Developer II, Plaintiff's job duties were as follows: (1) In collaboration with the Director of Application Development, proactively develop software solutions to advance Bible Translation; (2) Work with internal and external customers/users to identify, understand, and document their needs; (3) Work with team members and vendors to design, develop, document and implement custom solutions; (4) Computer programming, including but not limited to JavaScript, jQuery, C#, PHP, Python, REST APIs, and

a variety of other environments and technologies as needed; (5) Leverage experience and develop relationships to assist and mentor team members; and (6) Contribute creativity and energy to the task of accelerating Bible Translation. (Doc. 1, ¶ 15).  Obviously, nothing in the job description mentions Plaintiff acting as a "minister", but noticeably absent from Plaintiff's job responsibilities is any responsibility to perform any spiritual function or to convey a message of a church. Further, there is no requirement for Plaintiff to have any religious training or formal religious education.  Simply put, and as his title suggests, Plaintiff's role was to develop software for Defendant.  On April 13, 2020, Defendant terminated Plaintiff "in light of his sexual orientation."  (Doc. 1, ¶ 20-21).

## MEMORANDUM OF LAW

### A.    Legal Standard for Dismissal of Claims

In ruling on a motion to dismiss, the Court must view the complaint in the light most favorable to the Plaintiff, see, e.g., Jackson v. Okaloosa County, Fla., 21 F.3d 1531, 1534 (11th Cir. 1994), and must limit its consideration to the pleadings and any exhibits attached thereto. Fed. R. Civ. P. 10(c); see also GSW, Inc. v. Long County, Ga., 999 F.2d 1508, 1510 (11th Cir. 1993).  The Court will liberally construe the complaint's allegations in the Plaintiff's favor.  Jenkins v. McKeithen, 395 U.S. 411, 421 (1969).

In reviewing a complaint on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "courts must be mindful that the Federal Rules require only that the complaint contain 'a short and plain statement of the claim showing that

the pleader is entitled to relief.'" U.S. v. Baxter Intern., Inc., 345 F.3d 866, 880 (11th Cir. 2003) (citing Fed. R. Civ. P. 8(a)).  The purpose of this statement is "to give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  This is a liberal pleading requirement, one that does not require a plaintiff to plead with particularity every element of a cause of action.  Roe v. Aware Woman Ctr.for Choice, Inc., 253 F.3d 678, 683 (11th Cir. 2001).   The complaint's factual allegations "must be enough to raise a right to relief above the speculative level," Id. at 555, and cross "the line from conceivable to plausible." *Ashcroft v. Iqbal*, 556 U.S. 662, (2009).  What will be considered sufficient to state a claim will differ depending on the context of the complaint and "require[es] the reviewing court to draw on its judicial experience and common sense." Id.

## B.     Plaintiff's Complaint Sufficiently Pleads a Cause of Action under Title VII of the Civil Rights Act of 1964.

Plaintiff's Complaint pleads a cause of action for sex discrimination under Title VII of the Civil Rights Act of 1964 because Plaintiff has sufficiently alleged that his sexual orientation was a but-for reason for his termination.  Additionally, neither the First Amendment ministerial exception nor RFRA are applicable to this case.

### 1.     Plaintiff has sufficiently plead his sexual orientation was a but-for reason for his termination.

Title VII governs sex discrimination claims, making it illegal for an employer to fail or refuse to hire or discharge any person, or to discriminate against a person,

with respect to their race, color, religion, sex, and national origin.   42 U.S.C. § 2000e-2.  <u>Bostock v. Clayton County</u> held it is impossible to discriminate against someone for being homosexual without discriminating against them based on sex. 140 S. Ct. 1731, 1741 (2020).   Therefore, an employer violates Title VII by firing someone for being homosexual.   Sex need only be "one but-for" cause of the employment decision under Title VII, meaning the plaintiff's sex does not have to be the primary cause of the employer's action.  <u>Id.</u>  at 1739, 1744.   It just needs to play a role in the reasoning behind the adverse employment action.  <u>See</u> <u>id.</u> at 1739.

An   employer   who   discriminates   will   "almost   never   announce   a discriminatory animus or . . . provide direct evidence."  <u>Iadimarco v. Runyon</u>, 190 F.3d 151, 157 (3d Cir. 1999).   Here, that is not the case.   Defendant admits to firing Plaintiff "in light of his sexual orientation."  (Pl. Compl. ¶21).   Therefore, Plaintiff has sufficiently plead a cause of action for sex discrimination, and Defendant's Amended Motion to Dismiss should be denied.

### 2.      Plaintiff is not a minister under the ministerial exception.

Defendant's Amended Motion to Dismiss should be denied because Plaintiff does not meet the definition of a "minister" under the ministerial exception.   The ministerial exception is a branch of church autonomy doctrine.   <u>See</u> <u>Hosanna-Tabor Evangelical Lutheran Church & Sch. v. E.E.O.C.</u>, 565 U.S. 171, 190 (2012). Within Title VII, the ministerial exception prohibits legal claims relating to the employment relationships between religious organizations and *their ministers*.  <u>Id.</u> at 188 (emphasis added).   The ministerial exception applies to organizations like

4

Catholic schools and other organizations whose "'mission is marked by clear or obvious religious characteristics.'"  Conlon v. InterVarsity Christian Fellowship, 777 F.3d 829, 834 (6th Cir. 2015) (quoting Shaliehsabou v. Hebrew Home of Greater Wash., Inc., 363 F.3d 299, 310 (4th Cir. 2004)).  The case law regarding the ministerial exception overwhelmingly involves either actual clergy or teachers/professors at religious schools and colleges.

In the context of employment, the church autonomy doctrine is limited *only to employees who perform spiritual functions that qualify for the ministerial exception.*  Billard v. Charlotte Catholic High School, No. 3:17-cv-00011, 2021 WL 4037431 at *12 (W.D.N.C. September 3, 2021) (citing E.E.O.C. v. Roman Cath. Diocese of Raleigh, N.C., 213 F.3d 795, 801 (4th Cir. 2000) (emphasis added).  "If the church autonomy doctrine was so expansive as to create in all religious employers a First Amendment right to engage in employment discrimination, then there would be no need to have a ministerial exception because Title VII would not protect any employee of a religious organization."  Id.  Religious autonomy means there are some specific cases in which religious organizations can discriminate against employees who perform certain key roles.  Our Lady of Guadalupe, 140. S. Ct. at 2060.  "[T]eachers at religious schools who are entrusted with the responsibility of instructing their students in the faith" are ideal candidates for a ministerial exception, but the Supreme Court never intended to expand a religious organization's autonomy to encompass all types of employment discrimination. Billard, No. 3:17-cv-00011, 2021 WL 4037431 at *12 (quoting Our Lady of

Guadalupe, 140. S. Ct. at 20550); see also Herx v. Diocese of Ft. Wayne-South Bend Inc., 48 F. Supp 3d 1168, 1176-77 (N.D. Ind. 2014) (holding that a Catholic school language arts teacher was not a minister just because she supervised prayer); Bohnert v. Roman Cath. Archbishop of San Francisco, 136 F. Supp. 3d 1094, 1114-15 (N.D. Cal. 2015) (holding that a biology teacher was not a minister even though she spent some time daily on campus ministry duties); Billard, No. 3:17-cv-00011, 2021 WL 4037431 at *14 (holding that an English and drama teacher at a Catholic High School was not a minister for purposes of the ministerial exception.

The Court in Hosanna-Tabor focused on four relevant circumstances in its ministerial exception analysis but explicitly declined to "adopt a rigid formula for deciding when an employee qualifies as a minister." 565 U.S. at 190-92. First, whether the religious organization gave the employee the title of "minister, with a role distinct from that of most of its members." Id. at 191. Second, whether the employee's position "reflected a significant degree of religious training followed by a formal process of commissioning." Id. Third, whether the employee "held [themselves] out as a minister of the Church by accepting the formal call to religious service," or by claiming religious tax benefits. Id. at 191-92. And fourth, whether the employee's "job duties reflected a role in conveying the Church's message and carrying out its mission." Id. at 192. But the recognition of the significance of those factors in Hosanna-Tabor does not mean that they must be met—or even that they are necessarily important—in all other cases. Our Lady of Guadalupe Sch. v. Morrissey-Berru, 140. S. Ct. 2049, 2063 (2020). The title

"minister" is not itself dispositive to the ministerial exception, as many religions do not use the term.  Id.  "What matters, at bottom, is what an employee does."  Id. at 2064.

In Hosanna-Tabor, the Supreme Court held that a Lutheran school was shielded from an employment discrimination claim because Cheryl Perich qualified as a minister under the ministerial exception.  In reaching this decision, the Court weighed the following factors in favor of finding that Ms. Perich qualified as a minister: she (1) possessed the title "Minister of Religion," (2) received religious educational training including eight college-level courses in subjects including biblical interpretation, church doctrine, and the ministry of Lutheran teacher, (3) participated in a formal process of commissioning as a minister, (4) needed to obtain endorsement of her local Synod district, (5) passed an oral examination by the faculty committee at a Lutheran College, (6) became a minister only after election by the congregation, which recognized God's call to her to teach, (7) held herself out as a minister, and (8) carried out the church's mission by "leading students toward Christian maturity," teaching religion four days a week, leading students in prayer three times a day, accompanying students to weekly chapel, and leading chapel twice a year.  Hosanna-Tabor, 565 U.S. at 191-92.  "In light of these considerations—the formal title given Perich by the Church, the substance reflected in that title, her own use of that title, and the important religious functions she performed for the Church," the Court held that "Perich was a minister covered by the ministerial exception."  Id. at 192.

7

In <u>Our Lady of Guadalupe</u>, the Supreme Court held that two different Catholic elementary schools were shielded by the ministerial exception from employment discrimination claims brought by Ms. Morrissey-Berru and Ms. Biel. 140 S. Ct. at 2066-67.  The Court looked broadly at the roles these teachers served in their schools to determine if the ministerial exception should apply.  In reaching this decision, the Court weighed the following facts in favor of finding that Ms. Morrisey-Berru qualified as a minister: she (1) took religious education courses at the school's request, (2) was expected to attend faculty prayer services, (3) entered into employment agreements at the beginning of each year that clearly stated the school's Catholic mission and her role in advancing it, (4) participated in school liturgical activities, (5) was considered a catechist by the Archdiocese, (6) taught religion in her classroom and tested students on that curriculum, (7) directed and produced an annual passion play, (8) prepared and accompanied students to weekly Mass and other religious services, and (9) prayed with her students, including a daily Hail Mary.  <u>Id.</u> at 2056-57.  The Court weighed the following facts in favor of finding that Ms. Biel qualified as a minister: she (1) attended a conference that taught ways to incorporate God into the classroom, (2) entered an employment contract "nearly identical to Morrissey-Berru's," (3) was required to teach religion for 200 minutes each week, (4) administered a test on religion each week, (5) used a religious textbook in her classroom, (6) worshipped with her students, (7) prepared students to be active in the Mass by teaching them about the Eucharist and confession, (8) prayed with her students at monthly Masses, and

8

(9) was required to pray with her students every day—Ms. Biel prayed with her students twice a day. Id. at 2058-59. Because of the "record evidence that [ ] both [teachers] performed vital religious duties[,]" the Court held that they qualified as ministers under the ministerial exception. Id. at 2066.

Unlike the teachers in these two most recent Supreme Court cases, very few facts weigh in favor of finding that Plaintiff is a minister. The only factor that weighs in favor of finding that he is a minister is that he works for a company that translates the Bible, with a mission to advance the work of Bible translation around the world, and was tasked in his employment handbook with helping Defendant carry out its mission. However, many other facts in the record indicate that he was not a minister. First, Defendant did not bestow the title of "minister, with a role distinct from that of most of its members[,]" on Plaintiff. Hosanna-Tabor, 565 U.S. at 191. Plaintiff here developed software. Unlike the plaintiff in Hosanna-Tabor, who was issued a "diploma of vocation" and accorded the official title of "Minister of Religion, Commissioned," Plaintiff here was a secular employee. 565 U.S. at 191.

Second, Plaintiff's position did not "[reflect] a significant degree of religious training followed by a formal process of commissioning." Id. The plaintiff in Hosanna-Tabor had to complete eight college-level courses in subjects including biblical interpretation, church doctrine, and the ministry of the Lutheran teacher. Id. Here, however, Plaintiff did not have to undergo any religious training. Plaintiff's only requirements for education, skills, and knowledge were experience

with multiple different software applications and programs, and a preference for a bachelor's degree in computer science.  (Doc. 1-3, PageID 23-24).

Third, Plaintiff did not "[hold] [himself] out as a minister of the Church by accepting the formal call to religious service" or by claiming religious tax benefits. Hosanna-Tabor, 565 U.S. at 191-92.  There is nothing in the record that suggest Plaintiff did anything close to this.

Finally, Plaintiff's position as a software developer did not directly "[reflect] a role in conveying the Church's message and carrying out its mission."  Hosanna-Tabor, 565 U.S. at 192.  Defendant may attempt to satisfy this factor by claiming that Plaintiff was conveying its message because he was developing software for Bible translation.  However, merely because Plaintiff was tasked with developing software to "advance Bible translation," that does not mean he was somehow active in conveying the message of the Bible.  Using his skills and knowledge to develop translation software does not automatically make Plaintiff a master of relaying the message of what he is translating.  Nor was there any requirement of Plaintiff to actively convey the message of the Bible.  Plaintiff's role was purely secular. Further, unlike all three teachers in Hosanna-Tabor and Our Lady of Guadalupe, Plaintiff did not teach religion, was not tasked with preparing anyone for participation in Catholic worship services, and did not participate in any form of a liturgical service.

In sum, the church autonomy doctrine is not as broad as Defendant would have the Court believe.  There is not a single case that Defendant can cite to that

would support Plaintiff's secular position as a software developer should be considered a minister under the ministerial exception.  In fact, the cases cited in this response, when comparing the roles of the plaintiffs in those cases to the role of Plaintiff in this case, support that Plaintiff is not a minister.  This Court should find that Plaintiff was not a minister for the purposes of the ministerial exception, and should deny Defendant's Amended Motion to Dismiss.

### 3.    RFRA does not apply to lawsuits between private parties.

Defendant next argues that RFRA shields them from Plaintiff's sex discrimination claim. (Doc. 18. At 10).  RFRA was passed in reaction to the Supreme Court's decision in Employment Division v. Smith, where the Court altered the First Amendment's Free Exercise test to permit laws that are facially neutral, even if they incidentally burden religious exercise.  See Emp. Div., Dept. of Hum. Res. of Or. v. Smith, 494 U.S. 872 (1990); 42 U.S.C. § 2000bb(a)(4).

The plain language of the statute shows that RFRA does not apply to private parties. The relevant portions of RFRA include:

42 U.S.C. § 2000bb:

(a) Findings

The Congress finds that—

> (3) governments should not substantially burden religious exercise without compelling justification;

> (4) in Employment Division v. Smith, 494 U.S. 872 (1990) the Supreme Court virtually eliminated the requirement that the government justify burdens on

religious exercise imposed by laws neutral toward religion;

(5) the compelling interest test as set forth in prior Federal court rulings is a workable test for striking sensible balances between religious liberty and competing prior governmental interests.

(b) Purposes

The purposes of this chapter are—

(1) to restore the compelling interest test as set forth in Sherbert v. Verner, 374 U.S. 398 (1963) and Wisconsin v. Yoder, 406 U.S. 205 (1972) and to guarantee its application in all cases where free exercise of religion is substantially burdened; and

(2) to provide a claim or defense to persons whose religious exercise is substantially burdened by government.

42 U.S.C. § 2000bb-1: Free exercise of religion protected

(a) In general

Government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability, except as provided in subsection (b).

(b) Exception

Government may substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person—

(1) is in furtherance of a compelling governmental interest; and

(2) is the least restrictive means of furthering that compelling governmental interest.

(c) Judicial Relief

> A person whose religious exercise has been burdened in violation of this section may assert that violation as a claim or defense in a judicial proceeding and obtain appropriate relief against a government.

Defendant relies on a Second Circuit decision that has since been called into question by the Second Circuit itself.  See Hankins v. Lyght, 441 F.3d 96, 104 (2d. Cir. 2006) (holding RFRA applies in suits between private parties); See also Rweyemamu v. Cote, 520 F.3d 198, 201 & n.2 (2d Cir. 2008) (stating the Second Circuit has doubts about its determination in Hankins, and that it "does not understand" how RFRA can apply to suits between private parties "regardless of whether the government can enforce it").  The Hankins court reasoned that the language of RFRA was broad enough to encompass suits between purely private parties because the statute states RFRA "applies to all Federal law, and the implementation of that law," including "as a . . . defense in a judicial proceeding." 441 F.3d 96 at 103 (quoting §§ 2000bb-3(a), 2000bb-1(c)).  The court decided that the only conceivable limiting language is the phrase "and obtain appropriate relief against a government."  Id. (quoting § 2000bb-1(c)).

The dissent in Hankins, written by then-judge Sotomayor, began by stating that the limiting language the majority noted is not, in fact, the only such language, and that all of the statute's provisions must be read as a whole.  See id. at 114.  The dissent then analyzed the language of Section 2000bb-1(b), which states the "government may substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person."  Id.  The term

13

"demonstrates" is defined as "meet[ing] the burdens of going forward with the evidence and of persuasion." Id. (quoting § 2000bb-2(3)). The dissent concluded that the government cannot "demonstrate" the burden, as defined by the statute, without being a party. Id. Furthermore, the dissent said the phrase "obtain appropriate relief against a *government*" limits RFRA to suits where the government is a party. Id. (emphasis in original). The dissent went on to address Section 2000bb-3(a), which states RFRA applies to "all Federal law." Id. at 115 (quoting 2000bb-3). The dissent reasoned that, when reading the statute as a whole, this "provision simply requires courts to apply RFRA to all Federal law in any lawsuit to which the government is a party." Id. (internal quotations omitted).

Three other circuits have decided the issue, and all three have sided with the dissenting opinion in Hankins and held that RFRA does not apply to suits between private parties. See Gen. Conf. Corp. of Seventh-Day Adventists v. McGill, 617 F.3d 402, 410 (6th Cir. 2010); see also Listecki v. Official Comm. Of Unsecured Creditors, 780 F.3d 731, 737 (7th Cir 2015); Tomic v. Cath. Diocese of Peoria, 442 F.3d 1036, 1042 (7th Cir 2006); Sutton v. Providence St. Joseph Med. Ctr., 192 F.3d 826, 835-36 (9th Cir. 1999). The Sixth Circuit decided RFRA did not apply to suits between private parties. McGill, 617 F.3d at 410. In addition to adopting the textualist analysis of the Hankins dissent, the McGill court noted that RFRA requires the burden to be imposed by the government and that a compelling justification is required by the government. Id. at 411. Since the government

14

cannot satisfy this burden without being a party, the court reasoned that RFRA cannot apply to suits between private parties.  Id.

The Seventh Circuit came to the same conclusion.  Tomic, 442 F.3d at 1042. Judge Posner, writing for the court, described the majority's decision in Hankins as "unsound" and reasoned that "RFRA is applicable only to suits to which the government is a party."  Id.  In a later case, the Seventh Circuit expanded on Judge Posner's statement by explicitly holding that RFRA is a burden-shifting test where the burden of evidence and persuasion shifts from the party asserting RFRA to the government.  Listecki, 780 F.3d at 736-37.  The court expressly held that "RFRA is not applicable in cases where the government is not a party."  Id. at 736.

The Ninth Circuit also decided that RFRA does not apply to suits in which the government is not a party.  Sutton, 192 F.3d at 835-36.  The court stated RFRA was only applicable to private parties who were willfully participating with a government entity in some activity such that it would be fair to attribute their conduct to the government.  Id. at 843.  Thus, the Ninth Circuit essentially required a party to either be the government, or to be so intertwined with the government that it would be fair to consider the party's actions to be the government's.  See id.

In addition to the decisions in the circuit courts, district courts have almost universally agreed that RFRA does not apply to suits between private parties. See Billard, No. 3:17-cv-00011, 2021 WL 4037431 at *22 (holding RFRA does not apply to suits between private parties); Boggan v. Miss. Conf. of the United Methodist Church, 222 Fed. App'x 352 (8th Cir. 2007) (affirming a district court decision that

15

held RFRA does not apply to suits between private parties); see also Mathis v. Christian Heating & Air Conditioning, Inc., 158 F. Supp. 3d 317, 325-28 (E.D. Pa. 2016) (relying heavily on the reasoning in Listecki and McGill and explicitly rejecting the majority's reasoning in Hankins); Goodman v. Archbishop Curley High Sch., Inc., 149 F. Supp. 3d 577, 588-589 (D. Md. 2016) (stating—in a case between two private parties—that "there is no basis to dismiss this case under [RFRA]"); Johnson v. Wireman, No. 1:15-CV-02254, 2019 WL 1383575, at *5 (W.D. Pa. Mar. 27, 2019) (holding RFRA does not apply unless the government is a party).

Moreover, as noted earlier, the Hankins decision has received criticism from the Second Circuit itself.  See Rweyemamu, 520 F.3d at 201 & n.2.  Some district courts in the Second Circuit have also expressed their hesitations about applying RFRA to suits between private parties.  See Redhead v. Conf. of Seventh-Day Adventists, 440 F. Supp. 2d 211, 218-19 (E.D.N.Y. 2006) (stating "[t]he court has strong reservations in proceeding on the assumption that the RFRA is applicable in a suit between private parties, especially considering the plain language of the statute"); see also Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC, 531 B.R. 439, 483-84 (Bankr. S.D.N.Y 2015) (stating RFRA does not apply because the government is not a party); Wisc. Province of Soc'y of Jesus v. Cassem, 373 F. Supp. 3d 378, 390 (D. Conn. 2019) (stating "[t]he text of the statute lends itself to the interpretation that the Government must be taking some action in order for RFRA to apply").

In addition to the nearly uniform precedent holding that RFRA does not apply to purely private parties, this Court should look to the very well-reasoned analysis from the United States District Court in <u>Billard</u>, No. 3:17-cv-00011, 2021 WL 4037431 at *19.  There, the court's analysis of the statute revealed that the plain text mandates that RFRA does not apply in cases among private parties.  <u>Id.</u>  RFRA may be used as a "defense in a judicial proceeding[,] and [the defendant may] obtain appropriate relief against a government."  <u>Id.</u> (quoting § 2000bb(b)(2)).  The court further expanded,

> "In an adversarial judicial system, parties to a suit are described as arguing 'against' one another.  The word 'relief' is used when asking the court to have the other party alter their behavior.  As stated above, the word 'government' cannot mean a private party.  This court does not have any jurisdiction over a party that is not involved in the suit, so the court can only grant relief against parties to the suit.  The phrase 'against a government,' therefore, is best understood—in the context of the adversarial judicial system—as meaning the government must be an adversary to the party asserting RFRA in the suit.  Thus, Defendants, by attempting to assert RFRA against a private party, are asking the Court to not give effect to the phrase 'against a government.'"

2021 WL 4037431 at *19

Since the plain meaning of the statute is clear, the Court's job is at an end. <u>See</u> <u>Bostock</u>, 140 S. Ct. at 1749.  However, even if the Court looks to extratextual sources for legislative intent, RFRA's legislative history does not favor Defendant's position that RFRA applies to private parties.  The Court in <u>Bostock</u> explained that "[l]egislative history, for those who take it into account, is used to clear up ambiguity, not create it."  130 S. Ct. at 1749 (citations omitted) (internal quotations

17

omitted).  While the Hankins majority stated the legislative history did not favor one interpretation over the other, many courts—as well as then-judge Sotomayor's dissent in Hankins—have stated the legislative history favors finding RFRA does not apply to suits between private parties.  441 F.3d at 103; see id. at 115 n.9 (Sotomayor, J., dissenting) (explaining there is not a single example of a citation to a case involving private parties in the legislative history); Listecki, 780 F.3d at 737 (finding the legislative history of RFRA to be comprised solely of cases in which the government is a party); McGill, 617 F.3d at 411 (reasoning that "RFRA's legislative history supports our view that Congress did not intend the statute to apply against private parties").  Thus, precedent indicates that legislative history does not support Defendant's position.

Defendant also relies on a case from the D.C. Circuit, E.E.O.C. v. Cath. Univ. of Am., 83 F.3d 96 (D.C. Cir 1996).  However, Defendant is misplaced in its position that Catholic University held that RFRA applies to suits between private parties. Significantly, the E.E.O.C. was a party to the lawsuit in that case, and thus a government organization was clearly a party.  Further, the question of whether RFRA was applicable to lawsuits between two private parties was not at issue in that case.  Therefore, this Court should give Catholic University no weight in deciding Defendant's Amended Motion to Dismiss.

Finally, Defendant attempts to stretch the Bostock decision to somehow state that RFRA applies to suits between private parties.  (See Doc. 18, page 12). However, the Court in Bostock did not reach any conclusion that RFRA applies to

suits between private parties, as Defendant would have this Court believe.  The fact that the Court mentioned RFRA's protections in a general description of the law's protections of free exercise does not mean the Court was explicitly extending RFRA.  Rather, the Court in Bostock specifically stated, "RFRA . . . might supersede Title VII's commands *in appropriate cases.*"  140 S. Ct. 1731, 1754 (2021) (emphasis added).  In fact, in E.E.O.C. v. R.G. and G.R. Harris Funeral Homes, Inc., one of the companion cases in Bostock, the Sixth Circuit confirmed its previous holding that "Congress intended RFRA to apply only to suits in which the government is a party."  884 F.3d 560, 584 (6th Cir. 2018) (quoting Seventh-Day Adventists, 617 F.3d at 410).

The dissent in Hankins noted it was telling that in twelve years since RFRA's enactment in 1994, no court had previously held that RFRA applies to private parties.  441 F.3d at 115.  It has now been twenty-eight years, and Hankins, a decision questioned by district courts in the Second Circuit and the Second Circuit itself, still stands alone as the only circuit holding RFRA applies to private parties. This Court should not be the second.  In sum, this Court should follow the overwhelming majority of precedent and hold that RFRA does not apply to suits between private parties because the plain text of RFRA indicates the government must be a party and the legislative history does not contradict the plain text of RFRA.  Therefore, this Court should deny Defendant's Amended Motion to Dismiss.

Dated this 14th day of November, 2022.

Respectfully submitted,

/s/ Christopher J. Saba
**CHRISTOPHER J. SABA**
Florida Bar Number: 0092016
**WENZEL FENTON CABASSA, P.A.**
1110 North Florida Avenue, Suite 300
Tampa, Florida 33602
Main Number: 813-224-0431
Direct Dial: 813-321-4086
Facsimile: 813-229-8712
Email: csaba@wfclaw.com
Email: tsoriano@wfclaw.com
**Attorneys for Plaintiff**

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 14th day of November, 2022, the

foregoing was electronically filed with the Clerk of Court via the CM/ECF system,

which will send a notice of electronic filing to:

Mathew D. Staver
Horatio G. Mihet
Roger K. Gannam
Hugh C. Phillips
LIBERTY COUNSEL
P.O. Box 540774
Orlando, FL 32854
court@LC.org
hmihet@LC.org
rgannam@LC.org
hphillips@LC.org

/s/ Christopher J. Saba
**CHRISTOPHER J. SABA**